# FISHER v. McDANIEL, SHERIFF.

Contempt — Attempt to Bribe Witness — Jurisdiction — Constitutional Law — Sentence — Judgment — Imprisonment for Fine

1. The power to punish for contempts in the presence of the court is inherent in all courts of superior jurisdiction.
2. An attempt to bribe a witness in the presence of the court, or so near thereto as to interfere with its orderly procedure, is a contempt of court.
3. Where the court is being held in the court room on the second floor of the courthouse, an attempt to bribe witnesses in attendance upon the court, occurring in the hall of the courthouse on the first floor, or outside near the corner of the building, is a contempt committed in the presence of the court.
4. If an act is contempt, the fact that the same act is indictable as a criminal offense does not deprive the court of jurisdiction to punish the offender as for a contempt.
5. Section 5088 R. S., making the corrupt attempt to influence a witness a misdemeanor is not exclusive, and where the act amounts to a contempt it may be punished as such.
6. An attempt to bribe a witness in the presence of the court is a criminal contempt, and to such the statutes are applicable that empower the court, in all cases of conviction, when any fine is inflicted, to order the offender committed to jail, and prescribing the rate for determining the period of imprisonment for non-payment of the fine.
7. Section 5195 R. S. authorizing the court, " in all cases of conviction when any fine is inflicted," to order the offender committed until fine and costs are fully paid or otherwise legally discharged; and Section 5200 providing that any person committed for non-payment of fine or costs or both, may be imprisoned until such imprisonment at the rate of one dollar per day equals the amount of the fine or costs or both; the power of the court to order one sentenced to pay a fine to be committed is not confined to a case where the punishment inflicted consists only of a fine, but the power extends to cases where the sentence embraces both a definite term of imprisonment and a fine.
8. A sentence that the offender be imprisoned for the term of six months and pay a fine of $500, and ordering the offender into the custody of the sheriff, and to stand committed until

the fine is paid and the sentence served, is not indeterminate, since the statute fixes the rate at which such a sentence as to fine is to be executed by imprisonment.

9.   Much latitude must be accorded the Legislature in prescribing the degree of punishment for crime, as well as to the courts in imposing sentence, and to be held excessive in any case it should be so out of proportion to the offense as to shock the moral sense of the people.

10.   A sentence of six months' imprisonment in the county jail, and to pay a fine of $500 for contempt in attempting to bribe witnesses, does not violate the constitutional provision forbidding cruel and unusual punishments, since it is not altogether disproportionate to the offense, or so cruel or excessive as to meet or merit the condemnation of a reasonable public sentiment.

11.   Mere errors of law are not reviewable on *habeas corpus*, since the latter is not a substitute for a proceeding in error.

[Decided May 23, 1901.]

ORIGINAL proceeding on *Habeas Corpus.*

Belle Fisher was adjudged guilty of contempt by the district court for Carbon County, and sentenced to imprisonment for six months in the county jail, and to pay a fine of $500, and to stand committed until the fine be paid and the sentence served.   The term of imprisonment having expired, and she remaining imprisoned for non-payment of the fine, she applied to be discharged upon *habeas corpus.*   The facts are stated in the opinion.

*J. H. Ryckman*, for plaintiff ( *P. L. Williams & C. E. Blydenburgh* of counsel).

The acts constituting the alleged contempt are to be examined to ascertain whether in law they constitute a contempt, and, if they do not, the court was without jurisdiction to imprison, and the petitioner is entitled to be discharged on *habeas corpus.*   Miskimins v. Shaver, 8 Wyo., 392.

There is no statute making conduct such as plaintiff is charged with, a contempt of court.   The only criminal

statute providing punishment for contempt and fixing a definite penalty is Sec. 5087. "The common law prevails here." Exp. Bergman, 3 Wyo., 396. If the conduct complained of was not a contempt at common law, how, when, and by what process has it become a contempt at common law, in this State, and if not a contempt at common law and not a contempt by statute, the court never had any jurisdiction of the petitioner or the subject-matter to render the judgment she is held under.

The foundation principles of contempt at common law completely fail to embrace as a contempt the crime of corruptly endeavoring to influence a witness in the discharge of his duty, or in any manner tampering with a witness out of the presence of the court, or not so near thereto as to interfere with its orderly procedure. The offense attempted to be charged against the petitioner was the attempt to bribe a witness. Now the essence of this crime is that the accused shall have corruptly attempted to have a witness give particular testimony irrespective of the truth. This was not charged against the petitioner, and was not proved. This offense was indictable at common law, but was never the subject of contempt proceedings. (2 Whar. Crim. Law, 7th ed., Sec. 2287; 3 *id.*, 7th ed., Secs. 3432, 3442; 2 Va., 408; Neel v. State, 9 Ark., 259, 50 Am., Dec., 211; *Ex. p.* Wright, 65 Ind., 504; Burke v. State, 47 Ind., 528; Rapalje on Contempts, Sec. 22, 15; Androscoggin v. Androscoggin, 49 Me., 392; Laramie Nat. Bk. v. Steinhoff, 7 Wyo., 464; People v. Oyer and Terminer, 101 N. Y., 245; *Ex. p.*, Robinson, 19 Wall., 510; *In re* Wilson, 75 Cal., 580; *In re* McKnight (Mont.), 27 Pac., 338; 7 Enc. L., 2d ed., 27; 4 Bl. Com., 284.)

The court was therefore without jurisdiction, and its proceedings and commitment are void. The attempt to bribe a person is a misdemeanor at common law, and generally regulated by statute. 4 Enc. L., 2d ed., 914, and cases cited; Clark's Crim. Law, Sec. 144.

Tampering with a witness, or corruptly attempting to influence him in the discharge of his duty, in the language of our statute was a misprison at common law, in this country and England, prior to the adoption of the Federal Constitution, and punishable by fine and imprisonment, but is not mentioned by Blackstone as a contempt of court, or ever punishable as such summarily. Misprisons were all such high offenses as were under the degree of capital, but nearly bordering thereon. 4 Bl. Com., 119, 126, 284, 285, 286.

The crime was a misdemeanor at common law. It was not a contempt. Prior to the law of 1890, Sec. 5088, it was punishable in Wyoming as a misdemeanor by the common law, and not otherwise. Since that time it has been punishable as a misdemeanor by statute, and not otherwise. The abstract doctrine that the fact that an act may be indictable or punishable in some other manner does not deprive the court of the essential power to punish the same act as a contempt, we do not deny. It has no application to this case. In the nature of things it can have no application to this case. If we have demonstrated anything, it is that the crime never was a contempt at common law or by statute in this State. The doctrine applies only where a contempt at common law has been made indictable by statute. The Legislature by making it indictable cannot thereby take away from the court its inherent power to punish for contempt, and this is founded in reason; but neither the Legislature, nor any court in this country, has the power to declare that crime to be a contempt which has immemorially been indictable and punishable at common law. The line of demarcation is thus seen to be clear and distinct, separating the two classes of cases, blurred and obscured though it has been, sometimes, by ill-considered dicta of the courts and careless text-writers.

We think an examination of the cases where this proposition has been sustained will disclose this situation. That all such contempts were either in *facie curiae*, or disobedience or disregard of an order of court, or a libelous

publication relating to a proceeding then pending and tend-
ing to obstruct or interfere with the administration of justice
—all of which were contempts at common law — and in all
which the offense was double; i. e., an offense against the
court, as an organ of public justice, and an infraction of the
criminal code at the same time.

The conduct of the petitioner must clearly have been a
contempt or the court acquired no jurisdiction to proceed
summarily, and the sentence is void. (Miskimins v.
Shaver, 58 Pac., 414; Fischer v. Raab, 81 N. Y., 235;
Perkins v. Taylor, 19 Abb., 147; Clark v. Bininger, 75
N. Y., 35, 344.) The power of the court to punish for a
contempt, though undoubted, is in its nature arbitrary,
and its exercise is not to be upheld except under the
circumstances and in the manner prescribed by law. It
is essential to the validity of proceedings in contempt
subjecting a party to fine and imprisonment, that they
show a case in point of jurisdiction within the law by
which proceedings are authorized, for mere presumptions
and intendments are not to be indulged in their support.
(Batchelder v. Moore, 42 Cal., 414; Neel v. State, 50
Am. Dec., 211; Cooley, Torts, 494; State v. Frew, 24
W. Va., 477; Carter v. Com., 96 Va., 791; 3 Whar.,
Cr. L., 3440; Cheadle v. State, 11 N. E., 432; Haskett
v. State, 51 Ind., 176; People v. Wilson, 16 Am. R.,
545; People v. Court, 101 N. Y., 245; Kingsbery v.
Ryan, 92 Ga., 108; *In re* Brown, 4 Colo., 438; *Ex p.*
Grace, 12 Ia., 208; Young v. Cannon, 2 Utah, 560.)

If therefore attempting to bribe a witness was at com-
mon law a misdemeanor, and hence triable by a jury, and
such was the status of the offense at the time of the adop-
tion of the Federal Constitution, it is still a misdemeanor,
and for that reason the accused cannot constitutionally be
denied a jury. A summary conviction for the crime,
denominated though it may be, a contempt, is without
jurisdiction and void, and the petitioner should be dis-
charged. The court, therefore, was attempting to exer-
cise absolute and arbitrary power over the liberty and

property of the petitioner in contravention of Art I, Sec. 7, of the constitution, and hence had no jurisdiction. (*Ex p* Sweeney, 1 Pac., 379; Rex v. Wilkes, 4 Burr., 2539; Norris v. Clinkscales, 47 S. C., 488; Miskimins v. Shaver, 8 Wyo., 392; Wightman v. Karsner, 20 Ala., 446; *Ex. p.*, Fisk, 113 U. S., 713; Ins. Co. v. Morse, 20 Wall., 451; Brown on Jurisdiction, 110.)

The punishment inflicted is cruel and unusual, and violates Section 14, of Art I, of the constitution. (7 Enc. L., 37.) The offense charged against the plaintiff, if punishable at all, is indictable under Section 5088, and that Section is intended to furnish the sole remedy for · such an offense. (Hale v. State, 55 O. St., 210; State v. Morrill, 16 Ark., 384; Wyatt v. People, 17 Colo., 261.)

We come now to a consideration of the two remaining propositions in this case :

1. The insufficiency of the affidavit or information upon which the contempt proceeding was professed to be founded, and —

2. The proposition that judgment and commitment are informal, insufficient, vague, uncertain, indefinite, and illegal, and therefore void.

It must be conceded that the offense for which the petitioner is imprisoned is not a contempt by statute. Therefore, if a contempt at all it must be by the common law, and if by the common law, the procedure, the sentence and punishment must be by the common law, if not provided for by statute. We take it there is no statute regulating the procedure, limiting the punishment, or providing for the payment of fines in contempt proceedings. The procedure, therefore, is substantially as laid down in 4 Bl. Com., 287. The affidavit must give the judge sufficient ground to suspect that a contempt has been committed. If the contempt was not committed in the presence of the court, the affidavit must show it, and must contain a statement of the facts constituting the offense. In constructive contempt proceedings the affidavit or infor-

mation on which the warrant of attachment issues must always set out the matters claimed to constitute the alleged contempt, and must be sworn to, or the court acquires no jurisdiction. (*In re* Nickell, 28 Pac., 1078; State v. Henthorn, 46 Kan., 613; State v. Vincent, 26 Pac., 939; Cooper v. People, 22 Pac., 790; Batchelder v. Moore, 42 Cal., 412; Bk. v. Schermerhorn, 38 Am. Dec., 551.)

The information in this case was wholly insufficient, and so fatally defective as to be equivalent to no information as required by law, and that the court was therefore without jurisdiction, and the procedure and commitment are void.

The petitioner urges that the judgment is illegal and void because it does not contain a recital as required by law of the acts and conduct constituting the alleged contempt, nor does it indicate how or to whom the fine shall be paid to entitle her to her discharge. (People v. Turner, 1 Cal., 152, 155: Albany City Bank v. Schermerhorn, 9 Paige, 372; Porter v. Russell, 33 Wis., 201; Mann v. Brophy, 38 Wis., 426; Rawson v. Rawson, 35 Ill., App., 505; *In re* Marsh, McArthur & M. (D. C.), 32; Exp. Millett, 37 Mo. App., 76; De Witt v. Dennis, 30 How. Pr., 131; People v. Sheriff, 29 Barb. (N. Y.), 622; Com. v. Keeper, 23 W. N. C. (Pa.),193.)

If the commitment is for an indefinite time, as we think is indisputable in this case, the court had no jurisdiction, and the petitioner must be released. A court cannot punish for contempt by fine as for a criminal offense, and then commit until the fine is paid, or until further orders of court. Such person will be released on *habeas corpus.* 7 Enc. L., 2d ed., 37, and cases cited. It cannot be said, as was said *In re* Mac Donald, 4 Wyo., 150, that Sec. 5200 applies, and the sentence is not indeterminate, because the fine may be served out at the rate of one dollar per day.

The language of the commitment is to stand " committed to the custody of the said sheriff until said fine is paid and said sentence served.'' Four hundred and

ninety-nine dollars or 500 days in jail, as far as the commitment discloses, will not pay the fine, and as long as a cent of the $500 is unpaid the fine is not paid, and the petitioner cannot be discharged. The six months having been served, and the term at which the sentence was pronounced having expired, the case has passed beyond the control of the judge who pronounced the sentence. He cannot now, or at any subsequent time, interpose or vacate or modify the judgment in any respect. He cannot lessen the punishment therein fixed, any more than he can increase it, nor can he construe or interpret its phraseology for any purpose whatsoever, to ascertain what it means under the law, or what it does not mean. (People v. Thompson, 4 Cal., 238; Jobe v. State, 28 Ga., 235; Bish. Crim. Proc., Sec. 1123; Howard v. People, 3 Mich., 207; Archb. Cr. Pl., 17th Eng. ed., 176; Gurney v. Tufts, 37 Me., 130.)

We think it clear that Secs. 5199 and 5200 of themselves have no application to contempt cases, and neither the Legislature nor the commitment has attempted to make them applicable. (Exp. Robinson, 19 Wall., 505.)

Since the petitioner was sentenced to pay a fine, and also be imprisoned, Sec. 5199 has no application, and if Sec. 5199 has no application, neither has Sec. 5200, for this Section was clearly enacted by the Legislature to make definite and operative Sec. 5199, and with sole reference thereto.

The sentence of the petitioner is indeterminate, is therefore unjust and unreasonable — and void. The sentence cannot be taken by implication to have contemplated Sec. 5200. It does not refer to that Section in any manner. Nothing can be taken by implication in a sentence in a criminal case. It must be definite and certain. The sentence does not say the petitioner shall in default of the payment of the fine be confined in the county jail one day for each dollar of fine. It is therefore indeterminate and void. There is no law in Wyoming compelling a person fined for contempt and likewise imprisoned for six months, to serve

a day, or any other period of time, for each dollar or frac-
tion of a dollar till paid. Mere presumptions and intend-
ments are not to be indulged in contempt proceedings.
(4 Enc. Pl. & Pr., 817; Batchelder v. Moore, 42 Cal.,
411; *In re* Neustadt, 23 Pac., 124.)

The court on the hearing may examine the affidavit or
complaint to ascertain if it charges a contempt. If it
does not, the court was without jurisdiction and the peti-
tioner must be discharged. *Ex parte* Coy, 127 U. S.,
731. It is well settled that when a prisoner is held under
sentence of any court in regard to a matter wholly beyond
or without the jurisdiction of that court, it is not only
within the authority of the Supreme Court, but it is its
duty to inquire into *the cause* of the commitment, and
*  *  *  if the court had no jurisdiction, to discharge the
prisoner. (*Ex parte* Marbrough, 110 U. S., 651.)

The court in its inquiry to ascertain jurisdiction will
look into *so much of the proceeding* as will enable it to
determine whether jurisdiction exists or not. If the ille-
gality of the restraint grows out of the sentence imposed,
or any order of imprisonment which the court could not
make for want of jurisdiction, the want of the jurisdiction
may be inquired into by this court by *habeas corpus*, and
upon the hearing of such a case the court may make *such
inquiry as is necessary* to enable it to see whether the
jurisdiction of the court has been exceeded, or that there
is no authority to hold the petitioner under the sentence.
(*Ex parte* Farley, 40 Fed., 68.) The court will, upon
*habeas corpus*, examine the testimony under which a per-
son has been convicted, *sufficiently to determine* whether
there is any evidence tending to prove an offense of which
the court below had jurisdiction. (*Re* Cuddy, 131 U. S.,
286; *Ex parte* Irvine, 74 Fed., 960.) If there is a fair
doubt whether the act charged in the affidavit and estab-
lished by the evidence was a contempt, that doubt is to
be resolved in favor of the accused. (U. S. v. Wiltber-
ger, 5 Wheat., 76; Hydock v. State, 59 Neb., 297.)
When the facts charged or attempted to be charged in the

complaint and proved by the evidence do not constitute
any public offense, the defendant will, upon *habeas corpus*, ·
be discharged. *Ex parte* McNelty, 19 Pac., 238; *Ex
parte* Kearney, 55 Cal., 215.

*Homer Merrell*, County Attorney, and *J. A. Van
Orsdel*, Attorney General, for defendant.

There are but two questions of law involved in this
case :

First. Do the facts, as disclosed, constitute a contempt
under the laws of this State, and had the district court
jurisdiction to imprison and fine the petitioner for
contempt?

Second. Is the order of court committing the peti-
tioner to the custody of the sheriff of Carbon County
sufficient to authorize said sheriff to hold the petitioner in
custody until the fine imposed in this case has been fully
paid, as provided in Section 5200 of the Revised Statutes
of 1899?

On both of these points the supreme court of Wyoming
has given clear and decided expression. In the case of
Laramie National Bank v. Steinhoff, 7 Wyoming, 464,
the court quotes with approval from Rapalje on Con-
tempts, Section 21.

The contempt complained of in this case, as brought
out by the evidence, is clearly such a contempt as *obstructs
the administration of justice.* This is in direct accord
with the common law rule of contempt, which, we may
add, has been very much extended in modern practice.
" Anything in justice that demonstrates a gross want in
that regard and respect which when once courts of justice
are deprived of their authority (so necessary for the good
of the kingdom) is entirely lost among the people." ·(4
Blackstone, 286.)

The case of Savin, petitioner, 131 U. S., 267, is a case
largely in point as to the facts and the law with the case
at bar. True, congress has passed a statute defining what
are contempts in the federal courts, and somewhat limit

ing the scope of the common law.    (U. S. Rev. Stat., Sec. 725).

One of the common law grounds preserved in this statute is the *obstruction of the administration of justice.* The identical ground quoted from Rapalje on Contempts, and approved by the court in its opinion in the case of Bank v. Steinhoff, *supra*, is in the case of Savin, petitioner.    The facts are also identical with those disclosed in the case at bar.

There is nothing in the contention of the counsel for petitioner that because this offense was punishable as a crime under the provisions of Section 5088 it is therefore not punishable as a contempt.    There is some doubt whether Sec. 5088 embraces the offense contained in this case, but whether it does or not, it is immaterial so far as the case at the bar is concerned.

Second.    Is the judgment of the district court a sufficient authority for the sheriff to hold the petitioner in custody until the fine imposed by the court has been satisfied and paid?

It is our contention that the clause in the order providing that execution may issue for the enforcement or collection of the fine does not materially affect the conditions imposed by the court, except to reduce the term of imprisonment in so far as the county might be able to collect the fine or any portion thereof.    If an execution should find sufficient property to satisfy the entire fine, and the fine should be so satisfied, then the fine is paid under the conditions of the order, and the defendant would be entitled to a discharge after serving the term of imprisonment.    If the execution, as is true in this case, failed to disclose more property than is sufficient to pay forty dollars of the fine, then only so much of the fine has been paid, and the balance remains to be satisfied under the terms of the order, the same as in any other criminal case where the defendant is committed to the county jail under the order that he shall be held in the custody of the sheriff until the fine is fully paid and the

sentence served.   (*In re* McDonald, 4  Wyoming,  150.)

Error in the  record or  judgment of the  court will not
be corrected  by *habeas corpus*, the very thing  the court is
asked to do in this case.   *Id.*

The court is asked to issue a writ of *habeas corpus*
directing the sheriff of Carbon County to discharge the
petitioner by reason of a supposed error committed in the
trial of the case in the district court.

Counsel for petitioner in his brief cites numerous cases
and raises numerous contentions that in our judgment
have no bearing upon this case.

POTTER, CHIEF JUSTICE.

Upon the petition of Belle Fisher, claiming to be un-
lawfully imprisoned in the jail of Carbon County by the
sheriff of that county, a writ of *habeas corpus* was allowed
by one of the justices of this court and made returnable
before the court.   The case was heard upon the petition,
the return, plaintiff's reply thereto, and briefs of counsel.

The return embraces the record of the proceedings
resulting in the order for plaintiff's imprisonment, and
attached to the reply is a certified copy of the testimony.

It appears that one Martin W. Foley was being tried in
the district court of Carbon County, on the charge of
murder, from the 9th day of July, 1900, to the 14th day
of that month inclusive.   On the last-named date the
county and prosecuting attorney presented an information
charging that the petitioner herein on the 12th day of
July, 1900, pending the trial of the Foley case, corruptly
approached two of the witnesses for the State and at-
tempted to bribe them to testify falsely in said case, and
praying that she be ordered to appear and show cause
why she should not be punished for contempt of court.
To the information thus presented were attached the affi-
davits of the witnesses alleged to have been corruptly ap-
proached.   An order was thereupon entered requiring the
petitioner to appear at two o'clock on the same day and
show cause why she should not be punished for contempt.
She appeared in obedience to the order, and hearing

was had.   The two witnesses aforesaid were examined, and the petitioner testified in her own behalf.   Upon the submission of the matter the following order was entered:

"On this 14th day of July, A. D. 1900, came Homer Merrell, county and prosecuting attorney of Carbon County, and Belle Fisher in person and by attorney, and thereupon the application of said Homer Merrell to this court that said Belle Fisher be ordered to appear and show cause why she should not be punished for contempt, in attempting to bribe certain witnesses who are in attendance upon this court in the case of the State of Wyoming v. Martin W. Foley, charged with murder, was read to her.   And it appearing to the court that due service of a certified copy of said application and order of court issued herein was made upon the said Belle Fisher, she, the said Belle Fisher, now voluntarily appears and files no objection or answer to said proceedings and order, and said matter coming on to be heard, after hearing all the evidence on the part of the State and the defendant, the court, being fully advised in the premises, doth find that the said Belle Fisher did, on the 11th day of July, A. D. 1900, at the city of Rawlins, in said county and State, corruptly approach and offer to certain witnesses, in attendance upon said court in the case of State of Wyoming v. Martin W. Foley, money and other valuable considerations if they, the said witnesses, would modify their testimony and falsely swear in giving their testimony in said case.

"And the court doth now find the said Belle Fisher to be willfully and contumaciously guilty of such conduct and in contempt of court, and doth order, adjudge, and decree that the said Belle Fisher be fined in the sum of five hundred dollars ($500.00) and the costs attendant upon this proceeding, and that an execution issue therefor; and that the said Belle Fisher be confined in the county jail of Carbon County, at Rawlins, for the term of six (6) months.

"And the said Belle Fisher is now by the court ordered

into the custody of the sheriff of Carbon County in the State of Wyoming, and that she stand committed to the custody of the said sheriff until said fine is paid and said sentence served.''

The first and principal contention on behalf of the petitioner is that her alleged conduct did not constitute a contempt, and hence that the court was without jurisdiction in the premises, and its judgment void. In her petition, plaintiff charges that her offense was not alleged or proven to have been committed in the presence of the court, or so near thereto as to obstruct the procedure of the court; and the argument of her counsel is based upon that assumption. It is contended that an attempt to bribe a witness out of the presence of the court is not a contempt of court, but was punishable at common law as a crime, and was so punishable by statute in this State. It is not claimed that the court is without jurisdiction to punish as a contempt an act also indictable or punishable as an offense against the criminal laws, but it is conceded that the fact that an act is otherwise indictable does not deprive the court of the essential power to punish the same act as a contempt. It is, however, insisted that the offense charged against petitioner is not and never was a contempt of court. Counsel admit that the Legislature cannot, by making an act indictable, interfere with the inherent authority of a court to punish for contempt, but they argue that neither the Legislature nor the court is authorized to declare a crime to be a contempt, which has always been punishable as a distinct indictable offense at common law. It is practically conceded, if not in so many words, that the attempt to bribe a witness in the presence of the court, or so near thereto as to interrupt its orderly procedure, would amount to a contempt of court. In respect, therefore, to the question of jurisdiction, the contention of plaintiff's counsel is confined to the proposition that the acts charged to have been committed did not occur in the presence of the court, or so near thereto as to interfere with its procedure.

The information against the petitioner alleged that her conduct complained of, occurred at the city of Rawlins, in the county of Carbon. The court was in session in that city. But the affidavits attached to the information and upon which it was founded were more specific. The witness Isherwood deposed that he was corruptly approached by the petitioner, near the courthouse, and that she proposed that if he modify his testimony in the Foley case, and swear falsely from the evidence given by him at a former trial, she would pay him three hundred dollars. According to the affidavit of the witness Stafford, he was approached by petitioner in the courthouse, and the proposition made to him was that if he would change his testimony she would do the right thing, "meaning that she would compensate" the witness for so changing his testimony and swearing falsely.

On the hearing, Isherwood, being asked to state the circumstances of the attempt of the petitioner to bribe him, testified as to the place where it occurred as follows: "At that time I was supposed to be upstairs as a witness. I went down stairs to go to the water closet; when I got down past the corner Miss Fisher called me and I stopped." He then related the conversation between the petitioner and himself, in which the attempt was made to induce him to change his testimony. Stafford testified that he was approached by the petitioner in the hall of the courthouse down stairs — in the corridors between the two doors — and at that place the proposition was made to him to give false testimony. Both parties were in attendance upon the court as witnesses for the State in the criminal case already mentioned. Miss Fisher denied having made any corrupt propositions to either witness; but in giving her version of the affair she fixed the place of the conversation as "down stairs here," and again "there in the stairway," she stated that several persons were present, and some talk ensued, which she related, and that Doctor Stafford turned aside in the little hall-way, and she had some further conversation with him there. She admitted,

however, having met Isherwood at the corner of the courthouse, or "in" the corner, but denied having attempted to induce him to swear falsely.

In the case of Savin, 131 U. S., 267, it appeared that the petitioner had been adjudged guilty of contempt for having improperly endeavored to deter a witness from testifying in a case in behalf of the government, the offense of petitioner having been committed once in the jury room, temporarily used for witnesses, and once in the hallway of the court building immediately adjoining the court room. The question arose whether the misbehavior occurred in the presence of the court. It was held that it did. The court said, "The jury room and hallway where the misbehavior occurred, were parts of the place in which the court was required by law to hold its sessions," and after quoting the following from Bacon in his essay on Judicature : "The place of justice is an hallowed place; and therefore not only the bench, but the footpace and precincts and purprise thereof ought to be preserved against scandal and corruption," the court said further: "We are of opinion that, within the meaning of the statute, the court, at least when in session, is present in every part of the place set apart for its own use, and for the use of its officers, jurors, and witnesses; and misbehavior anywhere in such place is misbehavior in the presence of the court. * * * If, while Flores was in the court room waiting to be called as a witness, the appellant had attempted to deter him from testifying on behalf of the government, or had there offered him money not to testify against Gougon, it could not be doubted that he would have been guilty of misbehavior in the presence of the court, although the judge might not have been personally cognizant at the time of what occurred. But if such attempt and offer occurred in the hallway just outside of the court room, or in the witness room, where Flores was waiting in obedience to the subpœna served upon him, or pursuant to the order of the court, to be called into the court room as a witness, must it be said that such misbe-

havior was not in the presence of the court? — Clearly not."
The Savin case is strongly in point, the facts being very
much the same as in the case at bar; certainly as to the
attempt upon the witness Stafford. Upon the principle
laid down in that case no doubt can exist but that the
offense of petitioner, within legal contemplation, was com-
mitted in the presence of the court.

The bribing of witnesses or jurors strikes at the very
foundation of judicial determination; and the court would
be shorn of much of its efficiency in the administration
of justice if it possessed not the power to protect itself
against such reprehensible conduct as the corrupt inter-
ference with witnesses in the very precincts of the court,
where the witnesses assemble in obedience to subpœna,
and while waiting to be called to give their testimony.
Witnesses are not usually required to remain constantly
in the court room, and if they are in the hallway, witness
room if any, or about the building within easy call, the
purpose of their attendance is ordinarily subserved until
they are required to take the stand. When in the build-
ing in obedience to subpœna or order of court they are in
attendance upon the court and subject to its order, and we
are not inclined to adopt so technical a construction of the
law as would permit a person to station himself within
the building where the court is held, and there attempt to
corruptly influence the testimony of witnesses without
fear of being punished for contempt. The argument of
counsel that such conduct would not be in the presence of
the court or so near thereto as to interfere with its proce-
dure, or obstruct the administration of justice is, to say
the least, unreasonable. It is moreover opposed not only
by the decision of the United States Supreme Court in
the Savin case, but by other eminent authorities.

In Sinnott v. State, 11 Lea. (Tenn.), 281, it was held
that one was guilty of contempt who approached the
deputy sheriff while engaged in summoning jurors, with a
list of names of persons which he endeavored to induce
the deputy to summon as jurors; and also approached

another deputy and sought to induce him to summon a certain person upon the panel to the sheriff unknown; although neither of said acts were committed in the court-house, or in the *actual* presence of the court. The statute provided that a " willful misbehavior of any person in the presence of the court, or so near thereto, as to obstruct the administration of justice," is a contempt, and also that an abuse of or unlawful interference with the process or proceedings of the court is a contempt. The court said: " The attempt of defendant to induce the officers of the court to summon as jurors in the particular case then to be tried, certain persons specified by him in preference to others, or, in common parlance, to ' pack ' a jury, was an unlawful interference with the proceedings of the court within the purview of said provisions, and was a contempt for which he was punishable by the court. Nor was it material that it was not within the courthouse, or in the immediate presence of the court."

In the case of Brule, 71 Fed., 943, the accused was charged with having by the use of money, persuaded another to conceal and hide himself and absent himself from court, to avoid the service of a subpœna upon him, and thereby prevented the government from using him as a witness upon a criminal trial. He was adjudged guilty of contempt, and it was held that the act was punishable as a contempt, though it was done at the residence of the witness, at some distance from the court-house, in the town where the court was sitting, on the ground that it constituted a misbehavior so near to the court as to obstruct the administration of justice. The learned judge stated in the opinion that had the particular misbehavior charged occurred anywhere within the building where the court was held, it would have been misbehavior in the presence of the court, and added, " If it is a contempt to bribe a witness in front of the courthouse door, is it not a contempt to do the same thing on the street opposite the court building, or four blocks away? Is not the result the same? Is not the motive of the

accused the same? What difference does it make whether the attempt was made on the ground owned by the United States, or at the residence of the witness in the same town, four blocks, or about one quarter of a mile away, from the court building? In one case the misbehavior would be construed to be in the presence of the court, and in the other ' so near thereto as to obstruct the administration of justice,' and the statute, in clear language, is made to apply to both cases." See also Cuddy, Petitioner, 131 U. S., 280; Montgomery v. Circuit Judge, 100 Mich., 436; Langdon v. Wayne Circuit Judges, 76 Mich., 358; Hale v. State, 55 O. St., 210; Steube v. State, 3 O. Cir. C., 383.

In Hale v. State, the party adjudged to be in contempt had, by promising to pay the expenses of a witness, who had been subpoenaed, induced her to leave the county, and thereby prevented her appearance as a witness at the trial of a criminal case. The act was held to be a contempt of court and punishable as such, notwithstanding that it was by statute constituted a distinct criminal offense, and that no express provision of the statute made the statutory punishment cumulative.

It is well settled that if an act is a contempt of court, the fact that the same act is indictable as a criminal offense, does not take away the jurisdiction of the court to punish the offender as for a contempt. We understand this general principle to be conceded, while it is contended that a different rule governs this case. We do not think so. The case comes fairly within the general doctrine, and we apprehend that enough has been said to render further discussion unnecessary.

It is insisted that as Section 5087 of the Revised Statutes, providing for the punishment as a misdemeanor of one guilty of disobeying a subpoena, expressly states that it shall not prevent summary proceedings for contempt, while Section 5088 contains no such reference to contempt proceedings, and is not therefore expressly rendered cumulative, the remedy under the last-named

section for the acts covered thereby is sole and exclusive, and deprives the court of the power to punish such acts as for a contempt.

Under similar statutory provisions the contrary was held in Hale v. State, 55 O. St., 210, upon facts already alluded to in referring to that case. The statute in question (Sec. 5088) provides that "whoever corruptly or by force or threats or threatening letters, endeavors to influence, intimidate, or impede any juror, witness, or officer in the discharge of his duty; or by threats or force obstructs or impedes, or endeavors to obstruct or impede, the due administration of justice in any court of this State, shall be fined not more than one thousand dollars, to which may be added imprisonment in the county jail not more than sixty days nor less than ten days."

The act of petitioner clearly amounting to a contempt, bearing in mind the general rule above adverted to that making an act indictable as an offense does not invade the powers of a court to punish for contempt, we are not disposed to hold that petitioner was liable to be proceeded against only under Section 5088. The power to punish for contempts *in facie curiae* is inherent in all courts of superior jurisdiction. Legislative authority is not required for its existence or exercise. In this State indeed there is no statute conferring the power in such a case as the one at bar. We are clearly of the opinion that Section 5088 is not exclusive, and that where the act amounts to a contempt, it may be punished as such.

The judgment of the court was that the petitioner be fined in the sum of five hundred dollars, and be imprisoned in the county jail for the term of six months; and she was ordered into the custody of the sheriff and to stand committed until the fine is paid, and the sentence served. The term of imprisonment specified in the order has been served, and the petitioner is in custody for non-payment of the fine. It is contended that as to imprisonment for the fine, the sentence is indeterminate,

and therefore void. The argument is that we have no statute applicable to contempt cases prescribing the period of imprisonment for non-payment of a fine; and that the statutes controlling that matter in the case of crimes do not apply where the sentence embraces both fine and imprisonment.

Section 5195, Revised Statutes, provides that "Any court shall have power, in all cases of conviction when any fine is inflicted, to order, as part of the judgment of the court, that the offender shall be committed to jail, there to remain until the fine and costs are fully paid, or otherwise legally discharged."

It is provided by Section 5200 as follows: "Any person committed to jail for non-payment of fine or costs or both, may be imprisoned therein until such imprisonment, at the rate of one dollar per day equals the amount of such fine or costs, or both, as the case may be, or the amount shall be otherwise paid, or secured to be paid, when he shall be discharged."

It is apparent that the contempt for which petitioner was tried and convicted is criminal in its nature. Some difficulty has arisen out of the attempt to classify contempts, but petitioner's conduct was a direct contempt,— a contempt *in facie curiae*, and comes squarely within the class of criminal contempts. The offense being of a criminal character, we think it clear that the statutes empowering the court in all cases of conviction when any fine is inflicted, to order the offender to jail, and committed prescribing the method or rate for determining the period of imprisonment for non-payment of the fine, are applicable. *In re* Whitmore, 9 Utah, 441; 35 Pac., 524.

Some California cases are cited upon the proposition that where the sentence imposed comprises both fine and imprisonment, the statute authorizing the court to direct imprisonment at a prescribed rate per day for non-payment of the fine is inapplicable. *In re* Rosenheim, 83 Cal., 388; 23 Pac., 372. The statutes of Utah having been borrowed from California, the construction placed

upon them by the courts of the last-named State is followed in Utah.  Roberts v. Howells, Sheriff, 62 Pac., 892.

The reason for that construction is found in the peculiar language of the various statutory provisions, and it was held that the Legislature had failed to provide for the case of a sentence where a definite term of imprisonment, and also a fine coupled with imprisonment until its payment, has been imposed.  Under a statutory provision quite similar to that of California a contrary view is held in Iowa.  State v. Myers, 44 Ia., 580.  See also *In re* Beall, 26 O. St., 195.  But our statutes do not follow the phraseology of the California and Utah Statutes, and the decisions in those States are not controlling.  *In re* McDonald, 4 Wyo. 150.  Counsel maintains that Section 5200 was enacted to make definite and operative Section 5199 and with sole reference thereto.  Section 5199 provides that in the event of a sentence to pay a fine and costs, or to imprisonment and costs, the court may direct that in case of non-payment the defendant be put to work either in or without the prison until such fine and costs shall be paid.  A mere reference to the statutes as originally enacted will serve to demonstrate the unsoundness of counsel's position.  Section 5200, or rather the provision for which it was afterward substituted, was enacted in 1869 as a part of the criminal code, and provided that whenever a fine shall be the whole or part of a sentence, the court may, in its discretion, order the person sentenced to be confined in the county jail, until the amount of the fine and costs be paid.  The Crimes Act of 1890 repealed that provision, and in its stead embraced Section 5200 in its present shape except that the rate was fixed at one dollar and fifty cents per day, and imprisonment was limited to sixty days, which was changed by the succeeding Legislature to one dollar per day, and the limitation as to time omitted.  The provision found in Section 5199, however, was not enacted until 1873.  (See Comp. L., 1876, p. 168.)  And the Crimes Act of 1890 allowed Section

5199, then Section 3332, of the Rev. Stat. of 1887, to remain undisturbed. Hence it is apparent that the two Sections 5199 and 5200 were not originally so connected as to require the latter to be construed solely with reference to the former. But Section 5200 does not contain the only provision authorizing imprisonment, for non-payment of a fine. The language of Section 5195, which was Section 1063 of the revision of 1887 is sufficiently general to include the case of a fine, whether it be imposed as the whole or only part of a sentence. "Any court shall have power, in all cases of conviction when any fine is inflicted, to order" that the offender be committed. We perceive no reason for holding that this language refers only to a case of fine disassociated from a sentence for a definite term of imprisonment. It embraces *all* cases of conviction when *any* fine is inflicted. We are of the opinion that it clearly covers a case where the sentence embraces both fine and imprisonment. The sentence is not, in our judgment, indeterminate, since the statute fixes the rate at which such a sentence is to be executed by imprisonment.

It is claimed that the sentence violates Section 14 of Article 1 of the Constitution which prohibits the imposition of excessive fines, and the infliction of cruel and unusual punishment. It may be said to be fairly well settled that constitutional provisions as to cruel and unusual punishments, are aimed more at the form or character of the punishment rather than its severity in respect to duration or amount. 8 Ency. L. (2d ed.), 440; *In re* McDonald, 4 Wyo., 150; State v. Becker, 3 S. Dak., 29. But we are not prepared to decide absolutely, nor is it necessary that we do so, that a term of imprisonment or a fine provided by statute or the judgment of court could not in any case be held to be cruel or unusual, although entirely disproportionate to the offense committed. In the case in hand the punishment is certainly neither cruel nor unusual in respect to its character. If it violates the constitution, it is because the fine imposed is an excessive one. But it is evident that much latitude must be

accorded the Legislature in prescribing the degree of punishment for crime, as well as to the courts in imposing sentence; and that to be held excessive in any case it should be so out of proportion to the offense as to shock the moral sense of the people, or as said in State v. Becker, *supra*, "so excessive or so cruel as to meet the disapproval and condemnation of the conscience and reason of men generally." In that case it was said further that a punishment would not be interfered with as cruel or excessive, "except in very extreme cases, where the punishment proposed is so severe and out of proportion to the offense, as to shock public sentiment and violate the judgment of reasonable people." Counsel have referred to the statutes of some other States limiting the penalty in cases of contempt. It is to be observed therefrom that quite a difference exists between them, from a fine of $30, and imprisonment for thirty hours in Kentucky, to a fine of $500, and five days' imprisonment in California, six months' imprisonment in New York, and a like term in Wisconsin, and until costs and expenses are paid. We have not taken occasion to investigate the statutory limitations in States not mentioned in the brief of counsel. The sentence imposed in the Savin case, *supra*, was one year's imprisonment. While in the case of petitioner, the sentence is severe, and doubtless intended to be so, we cannot say that it is altogether disproportionate to the offense, and so cruel or excessive as to meet or merit the condemnation of a reasonable public sentiment. The corrupt attempt to influence the testimony of witnesses in a pending trial, in the building where the court is in session, and the witnesses are assembled, certainly calls for punishment such as may properly be inflicted in case of a flagrant misdemeanor. The trial court had the parties before it, and moreover the matter is not before us on error. The court otherwise having jurisdiction, the sentence must be so excessive, before we could interfere on *habeas corpus*, as to clearly violate the constitutional provision, and be, for that reason, utterly void.

The other matters urged in support of petitioner's application for discharge are such as go merely to the regularity of the proceedings, and do not affect the validity of the judgment.   Mere errors of law, if any, are not reviewable in this proceeding, as *habeas corpus* does not take the place of a proceeding in error.   For the reasons given we are of the opinion that the court had jurisdiction in the premises, and that its judgment is not void.   The petition will be dismissed.

CORN, J., and KNIGHT, J., concur. .