Troy MEERSCHEIDT, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

Matt BENNETT, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

Nate DOBSON, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

Mike DAVID, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

Nos. 96–26 to 96–28 and 96–33.

Supreme Court of Wyoming.

Jan. 8, 1997.

Sylvia L. Hackl, State Public Defender; Deborah Cornia, Appellate Counsel; and Donna D. Domonkos, Assistant Appellate Counsel, for Meerscheidt and David.

James W. Gusea of Gusea, Pattno & White, P.C., Cheyenne, for Bennett.

Ronald G. Pretty, Cheyenne, for Dobson.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Mi-

chael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Assistant Attorney General; Theodore E. Lauer, Director of the Prosecution Assistance Program; and T. Alan Elrod and Michael A. Iozzo, Student Interns for the Prosecution Assistance Program, for State.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

These cases arose out of the same criminal conduct and were consolidated by this Court for oral argument and decision. Appellants Troy Meerscheidt, Matt Bennett, and Nate Dobson appeal from the judgments and sentences which the district court entered after each of them pleaded guilty to two counts of felony property destruction. Appellant Mike David appeals from the judgment and sentence which the district court entered after he pleaded guilty to two counts of first-degree arson.

We affirm in part, reverse in part, and remand.

## ISSUES

Meerscheidt presents the following issues for our review:

*ISSUE I*

Did the trial court abuse its discretion when it ordered the appellant to pay for the victims' loss of enjoyment of life?

*ISSUE II*

Did the trial court err when it ordered the appellant to pay for the replacement of the Kelly[s'] dining room table?

*ISSUE III*

Did the trial court err when it declared the insurance companies to be victims without determining subrogation rights?

*ISSUE IV*

Did the trial court abuse its discretion when it placed unreasonable and improper conditions of probation on the appellant?

Bennett and Dobson present identical issues in their appellate briefs:

I.

Was restitution in the amount of $8,000.00 to the Lanes and $16,000.00 to the Kellys for loss of enjoyment of life proper?

II.

Was restitution to the Kellys in the amount of $3,293.84 for replacement of a table and chairs proper when only the table top was damaged and the cost to repair the table top was already included in other restitution amounts?

III.

Is possible restitution in an unknown amount for future moving expenses proper?

IV.

Is the requirement that the appellant pay an additional $1,500.00 to the crime victim's compensation account, if restitution for loss of enjoyment of life is overturned, proper?

David phrases his issues on appeal as follows:

*ISSUE I*

Did the trial court abuse its discretion when it ordered the appellant to pay for the victims' loss of enjoyment of life?

*ISSUE II*

Did the trial court err when it ordered the appellant to pay for the replacement of the Kelly[s'] dining room table?

*ISSUE III*

Did the trial court err when it declared the insurance companies to be victims without determining subrogation rights?

## FACTS

In the early morning hours of July 11, 1995, David suggested that the appellants drive to the Kellys' house and the Lanes' house because he was upset with certain members of those households. Although David provided directions to the two houses, the record is not clear as to whether he actually accompanied the other appellants to

the residences. In any event, the appellants threw rocks and broke a window in each house, and then they threw lighted "Roman candles" into the houses through the broken windows. Both houses were damaged by the rocks and the fireworks.

Pursuant to plea agreements, Meerscheidt, Bennett, and Dobson each pleaded guilty to two counts of felony property destruction. The district court held their pleas in abeyance and deferred their sentences. It placed them on probation pursuant to WYO. STAT. § 7–13–301 (1995) and ordered them to pay restitution for their crimes. David pleaded guilty under a plea agreement to two counts of first-degree arson. The district court sentenced David to serve a term of not less than three years nor more than five years in the Wyoming Department of Corrections, recommending that he be placed in the Wyoming Boot Camp. The district court also ordered David to pay restitution. Each appellant subsequently appealed to this Court.

## DISCUSSION

### A. Restitution for Loss of Enjoyment of Life

■ At the sentencing hearings, the victims testified that, as a result of the incidents, they were having trouble sleeping, they could not use the damaged rooms, and they worried about their families' safety. The district court ordered the appellants to pay $16,000 to the Kellys and $8,000 to the Lanes in restitution for their loss of enjoyment of life. The appellants contend that the district court erred by awarding that restitution because such awards are not authorized by the relevant statutes.

We need to examine the applicable statutes in order to determine whether the district court properly ordered the appellants to pay restitution for the victims' loss of enjoyment of life. WYO. STAT. § 7–9–103(a) (1995) provides in pertinent part:

(a) The court shall require restitution by a defendant if it determines or finds that the defendant has or will have an ability to pay or that a reasonable probability exists that the defendant will have an ability to pay. If restitution is ordered, or at the time the defendant is placed on probation, the court shall fix a reasonable amount as restitution owed to each victim for actual pecuniary damage resulting from the defendant's criminal activity, and shall include its determination of the pecuniary damage as a special finding in the judgment of conviction or in the order placing the defendant on probation under W.S. 7–13–301. In determining the amount of restitution, the court shall consider and include as a special finding, each victim's reasonably foreseeable actual pecuniary damage that will result in the future as a result of the defendant's criminal activity.

Restitution is defined as "full or partial payment of pecuniary damage to a victim." WYO. STAT. § 7–9–101(a)(iv) (1995). Pecuniary damage is

all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event, including damages for wrongful death. It does not include punitive damages and damages for pain, suffering, mental anguish and loss of consortium[.]

WYO. STAT. § 7–9–101(a)(iii) (1995).

■ We endeavor to interpret statutes in accordance with the legislature's intent. *State Department of Revenue and Taxation v. Pacificorp*, 872 P.2d 1163, 1166 (Wyo. 1994). We begin by making an "'inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.'" *Parker Land and Cattle Company v. Wyoming Game and Fish Commission*, 845 P.2d 1040, 1042 (Wyo.1993) (quoting *Rasmussen v. Baker*, 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute *in pari materia*. 845 P.2d at 1042.

When the words used are clear and unambiguous, that language establishes the rule of law. A statute is ambiguous only where its meaning is vague or ambiguous and subject to varying interpretations. Only if the wording is ambiguous or unclear to the point of demonstrating obscurity with respect to the legislative purpose or mandate do we resort to additional construction.

*Rivera v. State,* 846 P.2d 1, 6 (Wyo.1993) (citations omitted). Penal statutes must be strictly construed and "cannot be enlarged by implication or extended by inference or construction." *Smith v. State,* 902 P.2d 1271, 1284 (Wyo.1995). "We also recognize that ambiguity in a criminal statute should be resolved in favor of lenity." *ALJ v. State,* 836 P.2d 307, 310 (Wyo.1992).

The statutes generally allow a district court in a criminal case to award those damages as restitution which are available in a civil case. Sections 7–9–101(a)(iv), –103(a). Certain types of damages, however, may not be awarded: punitive damages and damages for pain, suffering, mental anguish, and loss of consortium. Section 7–9–101(a)(iv). The statutes do not directly address whether damages for loss of enjoyment of life may be awarded as restitution. Although those damages are available in civil cases, *Mariner v. Marsden,* 610 P.2d 6, 11–13 (Wyo.1980), they are akin to the damages for pain, suffering, and mental anguish which are expressly excluded in criminal cases. We are convinced, therefore, that an inherent ambiguity exists in the statutory pecuniary damages definition and warrants a further investigation into the legislature's intent.

■ Damages for pain, suffering, and mental anguish are general damages. *Mariner,* 610 P.2d at 11. General damages are "those which may not be fixed with any degree of pecuniary exactitude but which, instead, involve mental or physical pain or suffering, inconvenience, the loss of gratification of intellectual or physical enjoyment, or other losses of life or life-style which cannot really be measured definitively in terms of money."

*Id.* (quoting *Anderson v. Welding Testing Laboratory, Inc.,* 304 So.2d 351, 352 (La. 1974)) (emphasis omitted). Damages for loss of enjoyment of life also fall within the definition of general damages. *Id.*

■ Section 7–9–103(a) allows for the award of restitution for actual pecuniary damages. Pecuniary damages are generally defined as those damages which "can be estimated in and compensated by money." BLACK'S LAW DICTIONARY 353 (5th ed.1979). In contrast, general damages are, by definition, incapable of being fixed with any degree of " 'pecuniary exactitude.' " *Mariner,* 610 P.2d at 11.

■ We believe that the legislature intended to exclude any damages which remedy pain, suffering, or mental anguish. Even though damages for loss of enjoyment of life may be a separate element of general damages, they are intended, in some measure, to compensate injured parties for their pain, suffering, and mental anguish. *Mariner,* 610 P.2d at 11–12. This Court recognized that damages for pain, suffering, mental anguish, and loss of enjoyment of life are interrelated when we stated:

> Since loss of enjoyment of life is compensable, the fact finder in a case in which loss of enjoyment of life is proved may either make a separate award for loss of enjoyment of life or take into consideration the loss of enjoyment of life in arriving at the total general damages.

*Mariner,* 610 P.2d at 12. *See also* 2 MARILYN MINZER ET AL., DAMAGES IN TORT ACTIONS § 8.01 (1991). Consequently, looking at the entire context of the statutes and applying our rule of lenity, we conclude that the legislature intended to exclude damages for loss of enjoyment of life from the definition of actual pecuniary damages. The district court, therefore, erred by awarding restitution to the victims for their loss of enjoyment of life.

## B. Restitution for the Kellys' Dining Room Set

■ The Kellys' dining room table was damaged by the appellants' criminal actions. The appellants contend that they should not be required to pay $3,293.84 in restitution to replace the entire dining room set when only the table was damaged. They insist that the proper measure of damages was the difference between the dining room table's value before the incident and its value after the incident or the cost for repairing the table. The State counters that the appellants waived their rights to contest the restitution amount on appeal because they agreed in their plea agreements to pay the restitution.

The State also argues that, in any event, the restitution amount was appropriate.

▆▆▆▆▆ A criminal defendant may waive any personal right " 'so long as there is no violation of public policy and the public's interests are not thereby jeopardized.' " *Kahlsdorf v. State,* 823 P.2d 1184, 1193 (Wyo. 1991) (quoting *Taylor v. State,* 612 P.2d 851, 859 (Wyo.1980)). Such a waiver must be knowingly and intelligently given. *Id.* Therefore, when a criminal defendant knowingly and intelligently agrees in a plea agreement to pay restitution, he may not be heard to complain at a later date about the provision. *See State v. Ball,* 255 Kan. 694, 877 P.2d 955, 958, 960 (1994); *see also Daniels v. State,* 909 P.2d 972, 974 (Wyo.1996); *Kahlsdorf,* 823 P.2d at 1191–92; *King v. State,* 780 P.2d 943, 959 (Wyo.1989). A corollary to the waiver rule is the principle that a criminal defendant may not raise an issue for the first time on appeal. *See Kennedy v. State,* 890 P.2d 37, 38 (Wyo.1995).

In the respective plea agreements, each appellant agreed to pay restitution for the damages caused by the crimes. When the appellants entered their guilty pleas, the restitution amount was estimated to be in the range of $9,000 to $10,000. The presentence reports indicated that the final restitution amount was $10,031.18 and that the appellants were willing to make restitution. The $10,031.81 amount included $513.62 for the Lanes, $3,991.25 for the Lanes' insurance company, $3,793.84 for the Kellys, and $1,732.47 for the Kellys' insurance company.

On October 20, 1995, the district court held a proceeding to sentence Meerscheidt. The following colloquy took place at that hearing:

[MEERSCHEIDT'S ATTORNEY]: ... There is an agreement to restitution. We looked through the report. We don't find anything substantial incorrect, and we would ask the Court to follow the recommendation by the parties ... in this matter. I think that the victims did want to make a statement.

THE COURT: Is the amount of restitution accurate?

[MEERSCHEIDT'S ATTORNEY]: Reasonably so, your Honor. I'm not sure—there is only one issue that I'd like [to] refer to the Court, which is at page—I guess page 3, including the cover sheet. Under the victim's impact statement. One of the victims, the Kellys, there is [a] $500 deductible and $1732.47 to State Farm Insurance. There is also 3,000 in damages not covered by the insurance company.

I don't know what those are for. I guess I can ask the Court if we can have leave to take a look at any documents they have. We don't have any objection at this point to see what the background on that loss is.

....

[MEERSCHEIDT'S ATTORNEY]: ... We don't dispute it, your Honor. We just want to see what the basis for it is.

Mr. Kelly stated that the Kellys' claim was for the amount of the actual damage to their home that was not covered by insurance. He explained that the destruction totaled $5,526.31 and that they had received $1,732.47 in insurance proceeds.

The district court decided to postpone sentencing Meerscheidt so that all the appellants could be present. It scheduled another hearing for that purpose.

David was sentenced on November 3, 1995, at which time he indicated that his presentence report set forth the accurate restitution amount. Meerscheidt, Bennett, and Dobson were sentenced on November 20, 1995. At that time, Dobson and Bennett each stated that their respective presentence reports were accurate. When the district court asked whether Meerscheidt's presentence report was accurate, Meerscheidt's attorney did not restate his earlier concern about the restitution amount. Instead, he stated: "[W]e don't have any substantial corrections [to the presentence report]. Obviously, we need to address sentencing and restitution."

At the sentencing hearings, the district court ordered the appellants to pay, jointly and severally, the $10,031.18 [1] restitution

---

1. At the sentencing hearing, the district court ordered Meerscheidt, Bennett, and Dobson to pay $10,031.18 in restitution. The written orders indicate that the restitution amount was

amount which was specified in the presentence reports. The appellants did not object to the district court's orders.

The appellants knowingly and intelligently agreed in their respective plea agreements to pay restitution for the victims' damages. Such agreements do not violate public policy. *See Daniels,* 909 P.2d at 973–74; *Kahlsdorf,* 823 P.2d at 1191–95. The appellants were aware of the approximate amount of the damages at the time they entered their pleas, and they did not object to the restitution amount when the district court announced its decisions. By agreeing in their plea agreements to pay restitution for the property damage and by failing to object to the restitution amount, the appellants waived their rights to contest the restitution awards on appeal. They are, therefore, bound by the terms of their plea agreements and cannot now claim on appeal that the restitution amount was improper.

 Further, the record supports the amount of the district court's restitution award. Pursuant to § 7–9–103(a), defendants are obligated to pay for the actual pecuniary damage which results from their criminal activity. "Proof of the restitution amount as a question of sentence need only be proved by credible evidence, by a preponderance, or burden of the evidence." *Renfro v. State,* 785 P.2d 491, 493 (Wyo.1990). In cases where property is destroyed, the proper damage amount is the item's market value at the time it was destroyed. *Reposa v. Buhler,* 770 P.2d 235, 238 (Wyo.1989). The retail market value is used when the victim intends to replace the property. *Id.*

 Mrs. Kelly testified about the damage which the appellants had done to her home; i.e., broken window, burned carpet and tables, and damaged walls. In specifying her damages, she indicated that she was requesting an additional $3,793.84 [2] in damages to cover the amount which her insurance company would not pay and that she

had gotten an estimate to establish the dining room set's value. She explained that the insurance company would only pay to resurface the table top and that simply resurfacing the table top was not an adequate remedy because the resurfaced table top would not match the base or the chairs and she would not have a matched set.

The appellants claim that the Kellys received a double recovery for their dining room set because they received $1,732.47 from their insurance company to resurface the table top and they were also awarded $3,793.84 in restitution to replace the entire dining room set. The record does not support the appellants' claim. The Kellys' home suffered $5,526.31 in damages. Although their insurance company had agreed to pay to resurface the table top, the record does not show that the insurance company actually gave the Kellys any insurance proceeds for the dining room table. The record suggests that the $1,732.47 paid by the insurance company was for repairing the other damage which was done to the home; i.e., the broken window and the damaged carpet and walls. That would account for the total of $5,526.31 in damages—$3,793.84 for the dining room set and $1,732.47 for the other damages. Therefore, ample evidence existed in the record to support the district court's order which required the appellants to pay to replace the Kellys' dining room set.

## C. Insurance Companies as Victims

 The presentence reports identified the Kellys' and the Lanes' insurance companies as victims because they had paid insurance proceeds to the Kellys and the Lanes. The reports also set forth the restitution amounts claimed by the insurance companies. The district court ordered the appellants to pay restitution to the victims in accordance with the presentence reports. Meerscheidt and David insist that the district court erred by identifying the insurance companies as victims and awarding them restitution be-

$10,081.18. The $10,031.18 amount corresponds with the presentence reports and with the restitution amount specified in David's written order. We assume, therefore, that the $10,081.18 figure in the written orders was simply a clerical error.

2. We assume that the appellants are contesting only $3,293.84 of the $3,793.84 award because they are not opposed to reimbursing the Kellys for their $500 deductible.

cause the district court did not make findings under WYO. STAT. § 7–9–101(a)(v) (1995) as to whether the insurance companies had subrogation rights.

WYO. STAT. § 7–9–102 (1995) directs courts to order criminal defendants to pay restitution to the victims of their crimes. *See also* § 7–9–103(a). Section 7–9–101(a)(v) defines "victim" as

a person who has suffered pecuniary damage as a result of a defendant's criminal activities. An insurer which paid any part of a victim's pecuniary damages shall be regarded as the victim only if the insurer has no right of subrogation and the insured has no duty to pay the proceeds of restitution to the insurer.

The plain language of § 7–9–101(a)(v) allows an insurer to be considered as a victim, and therefore eligible to receive restitution payments, only if it does not have a subrogation right.

The parties have not directed us to any evidence, and we have not found any evidence in our perusal of the record, which indicates whether the insurers in this case did or did not have subrogation rights. In light of the absence of evidence, we are compelled to reverse the district court's awards of restitution to the insurers. We remand the case and direct the district court to modify the judgments and sentences so that the entire restitution amount is awarded to the Lanes and the Kellys. Our ruling does not reduce the amount which the appellants are required to pay in restitution because, whether they pay the restitution to the true victims or to the insurance companies, they are still responsible for the actual pecuniary damage caused by their criminal activities. Although only Meerscheidt and David presented this issue in their appeals, Bennett and Dobson are entitled to gain the benefit of our decision because the cases have been consolidated and the appellants are jointly and severally liable to reimburse the victims for their property damages. *See Billis v. State*, 800 P.2d 401, 407 (Wyo.1990).

**D. Future Moving Expenses**

■ The Lanes and the Kellys testified that they may move from Cheyenne because of the appellants' attacks upon their families. The district court included provisions in Meerscheidt's, Bennett's, and Dobson's judgments and sentences which stated that they were responsible, jointly and severally, for "any moving expenses incurred by the Kelly[ ]s and the Lane[ ]s if they move within the next eighteen (18) months." The district court did not, however, specify the restitution amount. Bennett, Dobson, and Meerscheidt maintain that the district court erred by awarding restitution for the victims' potential future moving expenses without setting a specified amount.

Section 7–9–103(a) provides that, "[i]n determining the amount of restitution, the court shall consider and include as a special finding, each victim's reasonably foreseeable actual pecuniary damage that will result in the future as a result of the defendant's criminal activity." The language in this section does "not permit the trial court to order restitution in an amount to be determined at some later date." *Leger v. State*, 855 P.2d 359, 362 (Wyo.1993). A district court must fix a specific amount of restitution at the time of sentencing for reasonably foreseeable future damages which may result from a defendant's criminal conduct. Section 7–9–103(a); *Leger*, 855 P.2d at 362; *see also Daniels*, 909 P.2d at 974.

Because the district court failed to designate the restitution amount, we reverse its order and remand the case for a determination of the specific amount, if any, of restitution which the appellants must pay for the victims' future moving expenses. In making that determination, the district court must decide whether the victims' potential moves are "reasonably foreseeable actual pecuniary damage[s] that will result in the future" because of the appellants' criminal actions. Section 7–9–103(a).

**E. Crime Victims' Compensation Account**

■ Bennett, Dobson, and Meerscheidt assert that the district court erred by ordering each of them to pay an additional $1,500 to the crime victims' compensation account in

the event that the awards for loss of enjoyment of life are not allowed by this Court.

■ The district court ordered Bennett, Dobson, and Meerscheidt to

pay to the Victim's Compensation Fund, as required by W.S. 1–40–119(a), 1977 Republished Edition, the sum of $50.00 by cash, certified check or money order payable to the Clerk of the District Court, Third Floor, County Building, Cheyenne, Wyoming, within 10 days of this Order and in such event that the Loss of Enjoyment [of Life restitution] is not awarded, the defendant[s] will pay an additional $1500.00 toward the Victim's Compensation Fund, to be paid in full over the term of the defendant[s'] probationary period; If the Loss of Enjoyment restitution is awarded, the additional $1,500.00 victim's compensation is null and void.

The district court made it very clear that the additional $1,500 surcharge was simply an alternate way of ordering the appellants to pay for the victims' loss of enjoyment of life. We have determined that the restitution awards for loss of enjoyment of life were improper. We will not allow the district court to make such awards through the back door under the guise of awarding victims' compensation surcharges.

The district court's order was improper for another reason as well. The district court did not specifically find that the appellants had the ability to pay the additional surcharge. We stated in *Murray v. State*, 855 P.2d 350, 359 (Wyo.1993), *cert. denied*, 510 U.S. 1045, 114 S.Ct. 693, 126 L.Ed.2d 660 (1994), that, under WYO. STAT. § 1–40–119(c) (Supp.1996), the district court must make a finding with regard to the criminal defendant's ability to pay before ordering him to pay a victim's compensation surcharge. Since the district court did not make those findings in this case, the surcharges were improper.

## F. Probation Condition

■ The district court placed Meerscheidt on probation under § 7–13–301. Meerscheidt asserts that the district court abused its discretion when it ordered him to surrender his driver's license as one of the conditions of his probation. He argues that the district court did not have the authority to revoke his license. Meerscheidt also argues that the probation condition was not reasonably related to his crime and placed an undue burden upon him.

WYO. STAT. § 7–13–304 (1995) allows a district court to impose any condition of probation upon a defendant. Under § 7–13–301(a)(iv), a defendant must "[c]onform his conduct to any other terms of probation the court finds proper."

The district court has wide discretion in determining appropriate conditions of probation. A probation condition is valid if it is "reasonably related to ... rehabilitation"; it should be deleted if it is "unrelated to the criminal conduct for which [the probationer] was convicted and is not reasonably related to future criminal conduct." *Hamburg v. State*, 820 P.2d 523, 531 (Wyo.1991).

*Leyba v. State*, 882 P.2d 863, 865 (Wyo.1994) (some citations omitted). "As a general rule, probation and parole conditions restricting access to vehicles are upheld when the offense involves the improper use of an automobile." NEIL P. COHEN & JAMES J. GOBERT, THE LAW OF PROBATION AND PAROLE § 6.25 at 267 (1983).

■ Meerscheidt maintains that suspensions and revocations of drivers' licenses are accomplished in civil, as opposed to criminal, proceedings. It is true that in Wyoming "proceedings to suspend or revoke a driver's license are civil and not criminal in nature." *Johnson v. State Hearing Examiner's Office*, 838 P.2d 158, 179 (Wyo.1992). This case, however, did not involve a suspension or revocation of Meerscheidt's driver's license. The district court ordered Meerscheidt to surrender his driver's license. By restricting his driving privileges, the district court merely required Meerscheidt to conform his conduct to certain standards while he was on probation. In that regard, this condition was not any different than the other conditions of his probation which forbade him from using or possessing alcohol and from having any contact with the victims. *See, e.g., Wlodarczyk v. State*, 836 P.2d 279, 286, 294 (Wyo.

1992) (probation condition forbade the appellant from consuming alcohol); *Vit v. State,* 909 P.2d 953, 955–56 (Wyo.1996) (probation condition forbade the appellant from having any contact with the victim).

 Meerscheidt also argues that the probation condition was not reasonably related to his crime. The district court expressly found otherwise when it stated:

> You, likewise, will surrender your driver's license as a further condition of probation. This incident occurred because there was a car involved. So you will not be allowed to do that.

The appellants traveled by car to and from the victims' homes. The incident may not have occurred if the appellants had not had access to a vehicle. The probation condition which required Meerscheidt to surrender his driver's license was reasonably related to his crime and to ensuring that he would not engage in future criminal conduct.

 Further, we are not convinced by Meerscheidt's argument that the probation condition placed an undue burden upon him. He contends that he will be unable to comply with the other conditions of his probation if he cannot drive; i.e., meeting his curfew, maintaining full-time employment, and performing his community service obligation. His contention is speculative; the record does not contain any evidence which reveals that it will be impossible for him to comply with his other probation conditions because he cannot drive. Additionally, Meerscheidt may petition the district court at any time to modify his probation conditions if they prove to be overly burdensome. Section 7–13–304(a). Meerscheidt has, therefore, failed to show that the district court abused its discretion by ordering him to surrender his driver's license as a condition of his probation.

## CONCLUSION

We hold that the district court properly required the appellants to pay to replace the Kellys' dining room set and did not abuse its discretion when it ordered Meerscheidt to surrender his driver's license as a condition of his probation. We hold, however, that the district court erred by ordering the appel-

lants (1) to pay restitution for the victims' loss of enjoyment of life, (2) to reimburse the insurance companies without making findings as to whether they had subrogation rights, (3) to pay for the victims' future moving expenses without making an express restitution award at the sentencing hearing, and (4) to pay the additional crime victims' compensation surcharges.

Affirmed in part, reversed in part, and remanded for further proceedings which are consistent with this opinion.