**Benjamin MERKISON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 98–102.

Supreme Court of Wyoming.

Feb. 17, 2000.

Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and Jenifer E. Scoggin, Student Intern. Argument by Ms. Scoggin.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

HILL, Justice.

Benjamin Merkison (Appellant) appeals from that portion of his sentence imposing restitution to the Division of Criminal Investigation (DCI).

We affirm.

## ISSUES

Appellant presents a single issue for our review:

Whether the trial court erred when it awarded restitution to the Division of Criminal Investigation of funds voluntarily .expended making undercover drug buys[.]

The State presents its position in the form of three issues:

I. May Appellant challenge the district court's restitution order after he has signed an agreement to pay restitution and has made the payments, without objection, or after he has served his prison sentence and been discharged from parole?

II. Was the Division of Criminal Investigation a "victim" within the meaning of Wyo. Stat. § 7–9–101, so that the district court properly ordered restitution of the "buy money" paid to purchase methamphetamine?

III. Did the district court properly order Appellant to pay restitution in the amount of $100.00?

## DISCUSSION

Appellant was convicted of conspiracy to deliver a controlled substance, methamphetamine, in violation of Wyo. Stat.1977, as amended, §§ 35–7–1031(a)(i) and 35–7–1042. During the trial, there was testimony from an undercover DCI agent that he had purchased $100.00 of methamphetamine from

Representing Appellant: Sylvia Lee Hackl, State Public Defender, Donna D. Domonkos, Assistant Public Defender; Diane Courselle, Wyoming Defender Aid Program; and Anthony M. Reyes, Student Intern. Argument by Mr. Reyes.

Representing Appellee: Gay V. Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General;

Appellant. Appellant's presentence investigation report contained a statement under the Restitution and Costs section wherein DCI requested restitution for $100.00 in an apparent bid to recoup the costs of its drug purchase. At sentencing, while Appellant objected to various aspects of the presentence investigation report, he did not raise any objection to the DCI request. The trial court ordered that Appellant pay $100.00 in restitution to DCI as part of his sentence.

Appellant subsequently signed a "Payment Agreement" wherein he agreed to pay costs that were assessed against him as part of his sentencing, including the $100.00 restitution. On May 5, and June 9, 1997, Appellant made two payments to the clerk of the district court totaling $200.00 with a portion of it specifically designated as restitution.

On appeal from his conviction, Appellant has contested only that portion of his sentence which required him to pay restitution to DCI. Appellant contends that DCI was not "damaged," nor was it a "victim," as those terms are used in the Wyoming statutes authorizing restitution. Appellant also challenges the sufficiency of the evidence supporting the amount of restitution ordered.

The State initially counters Appellant's claim by arguing that he is procedurally barred from attacking the restitution order since he failed to object to the restitution at sentencing. In the alternative, the State maintains this Court no longer has jurisdiction over the issue since Appellant has served his sentence and been discharged from parole. The State goes on to argue that DCI is a "victim" who has suffered "pecuniary damage" under the restitution statutes, and that the amount ordered is supported by sufficient evidence.

### Jurisdiction

▮ As an initial matter, we must address the State's contention that we do not have jurisdiction over this appeal since Appellant has served his sentence and been discharged from parole. The basis for the State's argument is our decision in *Brunsvold v. State,* 864 P.2d 34 (Wyo.1993). In *Brunsvold,* the defendant challenged the legality of a restitution order. 864 P.2d at 36. Two days prior

to the district court's determination of his motion, Brunsvold was discharged from probation. *Id.* The district court initially granted Brunsvold's motion but then subsequently rescinded its order, and Brunsvold appealed. *Id.* On appeal we held that Brunsvold's discharge from probation terminated the district court's jurisdiction over him. 864 P.2d at 37. In this case, the State argues that since Appellant has served his sentence and been discharged from parole, this Court no longer has jurisdiction over him pursuant to our decision in *Brunsvold.*

The State's reliance upon *Brunsvold* in this instance is misplaced. In *Brunsvold* the key to our ruling was that the trial court no longer had jurisdiction over the defendant when it ruled on his motion challenging the legality of the restitution because he had been discharged from probation. 864 P.2d at 37. In this case, there is no question that the trial court had jurisdiction when it entered its sentence against Appellant imposing restitution. What the State is really challenging, then, is the *appellate* jurisdiction of this Court. Procedurally, this case is before us upon Appellant's initial appeal from his conviction and sentence. Wyoming law is clear on this point:

In Wyoming, every defendant in a criminal case is entitled to an initial appeal as a matter of right.

*Smith v. State,* 902 P.2d 1271, 1284 (Wyo. 1995); *Farbotnik v. State,* 850 P.2d 594, 599 (Wyo.1993). Since the district court had jurisdiction to impose sentence on Appellant and this is his initial appeal, this Court clearly has appellate jurisdiction over the matter.

### Restitution

The provisions of the restitution statutes relevant to this appeal are set out in Wyo. Stat. Ann. § 7-9-101(a)(iii) and (v) (LEXIS 1999), which provides:

(iii) "Pecuniary damage" means all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event, including damages for wrongful death. It does not include punitive damages and damages for pain, suffering, mental anguish and loss of consortium;

. . . .

(v) "Victim" means a person who has suffered pecuniary damage as a result of a defendant's criminal activities.

We addressed these provisions in *Meerscheidt v. State*, 931 P.2d 220 (Wyo.1997). In that case, the defendants had entered into plea agreements which included paying restitution to the victims. On appeal, the defendants raised four challenges to the restitution order of the trial court. Two dealt with factual issues relating to the amount of damages. The first concerned the amount of restitution awarded for damages to one of the victims' dining room table. 931 P.2d at 224–226. We concluded that the defendants had waived their rights to challenge the amount of damages to the table by agreeing to pay pursuant to their plea agreements and by failing to object to the amount. 931 P.2d at 226. We went on to note that the amount was, in any event, supported by the facts in the record. *Id.* The second factual issue dealt with moving expenses the victims would incur for moving from Cheyenne because of the defendants' attacks on their families. 931 P.2d at 227. That part of the order was reversed because the trial court had failed to specify a certain amount, as required by Wyo. Stat. Ann. § 7–9–103(a) (LEXIS 1999), and the matter was remanded for a determination of a certain amount, if any, which should be awarded. *Id.*

The other two challenges mounted by the defendants in *Meerscheidt* related to the authority of the trial court to order certain aspects of the restitution under the statutes. Despite the existence of the plea agreements and the failure to object by the defendants, we proceeded to analyze these issues under a *de novo* statutory language review. The first issue concerned an award of $24,000.00 to the victims for loss of enjoyment of life. 931 P.2d at 223–224. We concluded that under the definition of "pecuniary damages" the trial court erred in making an award for restitution for loss of enjoyment of life and vacated that aspect of the order. *Id.* The second issue concerned whether certain insurance companies were victims under the restitution statute. 931 P.2d at 226–227. After noting that insurance companies can be victims under the statute if the insurer has no right of subrogation, we reversed and remanded the trial court's order that the insurance companies be awarded restitution because there was no evidence in the record regarding their subrogation rights, and, hence, the entire restitution amount should go to the victims of the crime. *Id.*

 The distinction between whether a defendant is making a factual challenge to an order of restitution or whether he is challenging the authority of the trial court to make a particular award of restitution is an important one. Challenges to the *factual* basis of an award of restitution can be waived in certain circumstances by the defendant's voluntary actions, such as entering into a plea agreement, and then failing to make any objection at sentencing, as occurred in *Meerscheidt*. *See also Aldridge v. State*, 956 P.2d 341, 343 (Wyo.1998). Outside the context of a plea agreement, the failure to object to a factual determination in the awarding of restitution results in an appellate review for plain error. *See Gayler v. State*, 957 P.2d 855, 857 (Wyo.1998). In contrast, a challenge by a defendant to the *authority* of a trial court to make a particular award of restitution is reviewed on appeal under a *de novo* statutory interpretation standard whether or not the defendant objected or entered into a plea agreement. *Meerscheidt*, 931 P.2d at 223–224, 226–227. While not explicit in our decision in *Meerscheidt*, the reason for conducting a *de novo* review under such circumstances is that a court has only that authority to act which is conferred by the subject statute. *Aldridge*, 956 P.2d at 343. ("The trial court's exercise of discretion in ordering restitution does not spring from any inherent authority. Rather that exercise, like our review, is circumscribed by the statutes empowering the trial court to order restitution.") (citation omitted); *see also Horn v. State*, 556 P.2d 925, 927 (Wyo.1976) ("[A] penal statute cannot be extended by implication or construction to persons or things not expressly brought within its terms, nor to cases not within the letter of the statute . . . ."). An order of restitution by a trial court which exceeds the authority granted by the statutes governing restitution would be void, and a void order

may be challenged at any time. *People v. Evans*, 122 Ill.App.3d 733, 78 Ill.Dec. 50, 461 N.E.2d 634, 639 (1984); *see also State ex rel. TRL by Avery v. RLP*, 772 P.2d 1054, 1057 (Wyo.1989).

 Applying the principles of *Meerscheidt*, we turn to Merkison's contentions beginning with his assertion that there was insufficient evidence to support the award of restitution. Since this is a challenge to the factual basis of the order of restitution and Merkison failed to object thereto, we apply a plain error standard of review. In order to demonstrate plain error, Merkison must show that a clear and unequivocal rule of law was violated in a clear and obvious way, and that a substantial right has been adversely affected resulting in material prejudice. *Gayler*, 957 P.2d at 859.

The standard for reviewing claims relating to the sufficiency of the evidence is well established:

> We review [a defendant's] challenge to the sufficiency of the evidence by determining whether all the evidence presented is adequate to form the basis for a reasonable inference of guilt beyond a reasonable doubt by the finder of fact. *Sutherland v. State*, 944 P.2d 1157, 1160 (Wyo.1997) (*quoting Bloomquist v. State*, 914 P.2d 812, 823–24 (Wyo.1996)). We view the evidence in the light most favorable to the state, affording every inference to be reasonably and fairly drawn, and do not consider conflicting evidence presented by the unsuccessful party. *Bloomquist*, 914 P.2d at 823–24. Though it may be possible to draw other inferences, it is the responsibility of the jury to resolve such conflicts and we will not substitute our judgment for that of the jury. Our sole duty is to ascertain "whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did." *Id.* at 824.

*Seeley v. State*, 959 P.2d 170, 175 (Wyo.1998). In this case, the undercover DCI agent testified that on two occasions he purchased $50.00 worth of methamphetamine at Merkison's house. Considering this testimony in the light most favorable to the State; clearly, the testimony of the DCI agent that Merki-

son had received $100.00 for selling the methamphetamine was sufficient to sustain the award of restitution in that amount. Hence, Merkison has failed to demonstrate that a clear and unequivocal rule of law—sufficiency of the evidence—was violated in a clear and obvious way.

Merkison's final challenge is to authority of the trial court to award restitution to DCI. Merkison argues that DCI is not a "victim," as that term is defined in § 7–9–101(a)(v), and, even if it is, DCI has not suffered "pecuniary damages" recoverable under § 7–9–101(a)(iii). Merkison's contentions concern the authority of the trial court to make an award of restitution; therefore, pursuant to our precedent in *Meerscheidt*, we review his claim *de novo*.

The resolution of this issue requires an examination of the statutory language set forth in § 7–9–101(a)(iii) and (v).

> Statutory interpretation begins by looking at the plain and ordinary meaning of the words contained therein to determine whether a statute is ambiguous. *Parker Land and Cattle Co. v. Wyoming Game and Fish Com'n*, 845 P.2d 1040, 1042–43 (Wyo.1993).
>
> > A "statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability." * * * "[A] statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations." * * * "[W]hether an ambiguity exists in a statute is a matter of law to be determined by the court."
>
> *Id.* at 1043 (*quoting Allied–Signal, Inc. v. Wyoming State Bd. of Equalization*, 813 P.2d 214, 219–20 (Wyo.1991)). If we find the statute is unambiguous, we apply its plain meaning. *Parker Land and Cattle Co.*, 845 P.2d at 1043.
>
> We read a statute so that every word, clause and sentence is given effect so, if possible, no part of the statute is rendered inoperative or superfluous. *State Dept. of Revenue and Taxation v. Pacificorp.*, 872 P.2d 1163, 1166 (Wyo.1994); *Reliance Ins. Co. v. Chevron U.S.A. Inc.*, 713 P.2d 766,

770 (Wyo.1986). In construing the statute, our main objective is to effectuate the intent of the legislature. *Moncrief v. Harvey,* 816 P.2d 97, 105 (Wyo.1991).

*Bolack v. Chevron, U.S.A., Inc.,* 963 P.2d 237, 240–41 (Wyo.1998).

■ Pursuant to § 7–9–101(v), a "victim," for purposes of restitution, "means a person who has suffered pecuniary damage as a result of a defendant's criminal activities." The term "person" is not defined in the statutory provisions covering restitution. See Wyo. Stat. Ann. §§ 7–9–101 through 7–9–115 (LEXIS 1999). Merkison argues that the most analogous statutory provision containing a definition of "person" is found in Wyoming's Victim Bill of Rights at Wyo. Stat. Ann. § 1–40–202 (LEXIS 1999), which defines a "person" as an "individual," and since DCI is not an "individual," then it cannot be a "victim" for purposes of restitution. Merkison's analogy is misplaced because, as pointed out by the State, the legislature established a definition of "person" in Title 8, the General Provisions section of Wyoming's statutes. That definition at Wyo. Stat. Ann. § 8–1–102(a)(vi) (LEXIS 1999) provides:

> (a) As used in the statutes unless the legislature clearly specifies a different meaning or interpretation or the context clearly requires a different meaning:
>
> . . . .
>
> (vi) "Person" includes an individual, partnership, corporation, joint stock company or any other association or entity, public or private[.]

Merkison fails to provide us with any argument that the legislature clearly specified a different meaning or interpretation or that the context of the word "person" in § 7–9–101(a)(v) clearly requires a different meaning than that set forth in § 8–1–102(a)(vi). Indeed, as that term is used in § 7–9–101(a)(v), there is nothing that suggests otherwise. Merkison's argument would, in fact, severely curtail the meaning of "victim" by limiting it to "individuals." This narrow interpretation espoused by Merkison would, for example, make restitution unavailable to such entities as corporations, partnerships, or state agencies which have suffered financial loss due to employee theft. We find nothing in the plain language of the statutes authorizing restitution which would suggest that the legislature clearly intended to so narrowly limit the scope of eligibility for restitution. Therefore, we conclude that the term "person," as defined in § 8–1–102(a)(vi), is the meaning the legislature intended to incorporate into the restitution statutes when it utilized the term in the definition of a "victim." Under the clear and unambiguous definition of "person" contained therein as "any other *association or entity, public* or private," DCI qualifies as a "person," and, hence, as a "victim" under § 7–9–101(a)(v) (emphasis added).

■ Having determined that DCI is a "victim," however, answers only half the question. In order to be entitled to restitution, a victim must have suffered "pecuniary damages" which is defined in § 7–9–101(a)(iii) as "all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event." Merkison, naturally, contends that DCI has not suffered any pecuniary damages because it could not recover the buy money in a civil action. The State counters that it does have a civil cause of action against Merkison for the buy money under the contract theories of rescission and restitution. We conclude that DCI does have a civil cause of action available to it for the recovery of the buy money, but not on contract principles as suggested by the State. Rather, we find that DCI's cause of action arises out of the forfeiture provisions of the Controlled Substances Act, Wyo. Stat. Ann. §§ 35–7–1011 to 35–7–1057 (LEXIS 1999).

Merkison was convicted of conspiracy to deliver a controlled substance, methamphetamine, in violation of §§ 35–7–1031(a)(i) and 35–7–1042. The Controlled Substances Act provides for civil forfeiture actions in certain circumstances for violations of the provisions of the Act. Wyo. Stat. Ann. § 35–7–1049 (LEXIS 1999). Included among the things subject to forfeiture are:

> Any property or other thing of pecuniary value furnished in exchange for a controlled substance in violation of this act including any proceeds, assets or other property of any kind traceable to the ex-

change and any money, securities or other negotiable instruments used to facilitate a violation of this act. Property used or furnished without the consent or knowledge of the owner is not forfeitable under this section to the extent of his interest. Wyo. Stat. Ann. § 35-7-1049(a)(viii) (LEXIS 1999). The clear and unambiguous language of that statutory provision indicates that the buy money expended by DCI was a thing "of pecuniary value furnished in exchange for a controlled substance in violation of this act." Therefore, DCI had a civil cause of action to recover the buy money under the Controlled Substances Act, and, accordingly, it had suffered "pecuniary damage" entitling it to restitution under the facts of this case.

In addition, it is possible that even absent the existence of a specific statutory right for a civil recovery of its pecuniary damages, DCI may also have a common law right of action grounded in the concept of unjust enrichment.

We have long recognized that an action for money had and received "is an equitable action, and no recovery can be had except upon proof that the defendant has received money of the plaintiff which, in equity and good conscience, it ought not to retain. That is the basis and foundation of the action." *Carton v. Board of County Commissioners of Uinta County,* 10 Wyo. 416, 435, 69 P. 1013 (1902). We have also recognized that an element of fraud or tortious conduct on the part of the defendant is not necessary in an action for "unjust enrichment."

. . . .

The words "unjust enrichment" concisely state the necessary elements of an equitable action to recover money, property, etc., which "good conscience" demands should be set over to the appellee by appellants pursuant to an implied contract between them.

*Landeis v. Nelson,* 808 P.2d 216, 217–18 (Wyo.1991). Clearly, Merkison received money from DCI which, in equity and good conscience, he ought not to retain based upon his inability to furnish lawful consideration for the money he received.

## CONCLUSION

DCI was a "victim" which had suffered "pecuniary damage" as a result of Merkison's criminal activities, and, therefore, the district court did not err in awarding restitution in the amount of the buy money expended by DCI.

Affirmed.