141 P.3d 101 (2006)
2006 WY 103
Virginia K. HAMPTON, Appellant (Defendant),
v.
The STATE of Wyoming, Appellee (Plaintiff).
No. 05-269.
Supreme Court of Wyoming.
August 23, 2006.
*102 Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Senior Assistant Appellate Counsel. Argument by Mr. Roden.
Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Assistant Attorney General. Argument by Ms. Pojman.
Before VOIGT, C.J., and GOLDEN, HILL[*], KITE, and BURKE, JJ.
VOIGT, Chief Justice.
[¶ 1] Virginia Hampton pled no contest to one count of forgery and one count of using false written statements to obtain property or credit. At sentencing, William Stevens sought restitution as a victim of the forgery. Hampton contested such restitution, but the district court ultimately ordered her to pay Stevens $15,113. Hampton now appeals the restitution order. We reverse.

ISSUE
[¶ 2] Did the district court err in ordering Hampton to pay restitution to Stevens?

FACTS
[¶ 3] Pursuant to a plea agreement, Hampton pled no contest to one count of forgery in violation of Wyo. Stat. Ann. § 6-3-602(a) (LexisNexis 2005 & Supp.2006) and one count of using false written statements to obtain property or credit in violation of Wyo. Stat. Ann. § 6-3-612(a) (LexisNexis 2005). The district court relied on the affidavit of Sublette County Deputy Sheriff Paul Raftery for the factual basis for Hampton's pleas.[1] The affidavit alleged that: (1) with respect to the forgery charge, Hampton applied for  and subsequently received and useda Mastercard from MBNA in Stevens' name on December 28, 1999; and (2) with respect to the use of false written statements to obtain property or credit charge, Hampton obtained an American Express credit account in her daughter's name on August 29, 2000.[2]
[¶ 4] In exchange for Hampton's no contest pleas, the State dismissed two other charges that had originally been filed against *103 her.[3] The plea agreement, as recited by the district court, also provided as follows:
The Defendant will be sentenced to a term of not less than 2 years nor more than 4 years on each count, which sentences will run concurrently. The sentences will be probated, and the Defendant will be placed on supervised probation for 3 years on each count, which terms of probation will run concurrently. At sentencing, the victim will be allowed to address the Court and make any claim for restitution for all Counts involving the victim, and the Defendant can argue restitution to the Court.
[¶ 5] At sentencing, Stevens sought $69,113 in restitution. Stevens claimed that his "credit was destroyed" by Hampton's actions and, therefore: (1) he lost the opportunity to purchase real estate that later appreciated by $54,000; (2) he incurred a $10,847 federal income tax penalty and a $1,084 California income tax penalty because he "cashed out" a retirement account to build his house when he could not secure a loan; and (3) he had to pay a higher interest rate for an automobile loan that resulted in $3,182 more interest due over the life of the loan. Ultimately, the district court ordered Hampton to pay Stevens restitution for the income tax penalties and the increased interest charges, but declined to order restitution for the $54,000 lost real estate opportunity.

STANDARD OF REVIEW
[¶ 6] We have said the following about our standard of review for restitution orders:
Appellate review of ordered restitution is confined to a search for procedural error or a clear abuse of discretion. Aldridge v. State, 956 P.2d 341, 343 (Wyo. 1998). The amount of restitution fixed by the trial court should be supported by evidence sufficient to afford a reasonable basis for estimating the loss. Hilterbrand v. State, 930 P.2d 1248, 1250 (Wyo. 1997). A challenge to the amount of restitution set by the court must demonstrate an abuse of discretion. "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." Brock v. State, 967 P.2d 26, 27 (Wyo.1998) (quoting Vaughn v. State, 962 P.2d 149, 151 (Wyo.1998)). We have held that a victim impact statement, such as that incorporated into the Presentence Report in this case, is credible evidence upon which a trial court may impose a restitution amount. Stowe v. State, 10 P.3d 551, 553 (Wyo.2000).

Brown v. State, 2003 WY 72, ¶ 9, 70 P.3d 238, 241 (Wyo.2003). As explained in Merkison v. State, 996 P.2d 1138, 1141 (Wyo.2000) (emphasis in original), however, there is a distinction between the standard of review of factual challenges to the amount of restitution ordered and challenges to the authority of the court to make a restitution award:
The distinction between whether a defendant is making a factual challenge to an order of restitution or whether he is challenging the authority of the trial court to make a particular award of restitution is an important one. Challenges to the factual basis of an award of restitution can be waived in certain circumstances by the defendant's voluntary actions, such as entering into a plea agreement, and then failing to make any objection at sentencing, as occurred in Meerscheidt [v. State, 931 P.2d 220 (Wyo.1997)]. See also Aldridge v. State, 956 P.2d 341, 343 (Wyo.1998). Outside the context of a plea agreement, the failure to object to a factual determination in the awarding of restitution results in an appellate review for plain error. See Gayler v. State, 957 P.2d 855, 857 (Wyo.1998). In contrast, a challenge by a defendant to the authority of a trial court to make a particular award of restitution is reviewed on appeal under a de novo statutory interpretation *104 standard whether or not the defendant objected or entered into a plea agreement. Meerscheidt, 931 P.2d at 223-224, 226-227.
Penner v. State, 2003 WY 143, ¶ 7, 78 P.3d 1045, 1047-48 (Wyo.2003) (emphasis in original).
[¶ 7] To the extent this case involves construing our restitution statutes, we have said:
We endeavor to interpret statutes in accordance with the legislature's intent. State Department of Revenue and Taxation v. Pacificorp, 872 P.2d 1163, 1166 (Wyo.1994). We begin by making an "`inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.'" Parker Land and Cattle Company v. Wyoming Game and Fish Commission, 845 P.2d 1040, 1042 (Wyo.1993) (quoting Rasmussen v. Baker, 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute in pari materia. 845 P.2d at 1042.
When the words used are clear and unambiguous, that language establishes the rule of law. A statute is ambiguous only where its meaning is vague or ambiguous and subject to varying interpretations. Only if the wording is ambiguous or unclear to the point of demonstrating obscurity with respect to the legislative purpose or mandate do we resort to additional construction.

Rivera v. State, 846 P.2d 1, 6 (Wyo.1993) (citations omitted). Penal statutes must be strictly construed and "cannot be enlarged by implication or extended by inference or construction." Smith v. State, 902 P.2d 1271, 1284 (Wyo.1995). "We also recognize that ambiguity in a criminal statute should be resolved in favor of lenity." ALJ v. State, 836 P.2d 307, 310 (Wyo.1992).
Meerscheidt v. State, 931 P.2d 220, 223-24 (Wyo.1997).

DISCUSSION
[¶ 8] A trial court does not have the inherent power to award compensation to victims of crimes; it may only order restitution that is authorized by statute. Penner, ¶ 7, 78 P.3d at 1048. Wyo. Stat. Ann. § 7-9-102 (LexisNexis 2005 & Supp.2006) states:
In addition to any other punishment prescribed by law the court shall, upon conviction for any misdemeanor or felony, order a defendant to pay restitution to each victim as determined under W.S. 7-9-103 and 7-9-114 unless the court specifically finds that the defendant has no ability to pay and that no reasonable probability exists that the defendant will have an ability to pay.
Wyo. Stat. Ann. § 7-9-103 (LexisNexis 2005 & Supp.2006), further provides, in pertinent part:
(a) As part of the sentencing process . . . in any misdemeanor or felony case, the prosecuting attorney shall present to the court any claim for restitution submitted by any victim.
(b) In every case in which a claim for restitution is submitted, the court shall fix a reasonable amount as restitution owed to each victim for actual pecuniary damage resulting from the defendant's criminal activity. . . .
A "victim" is "a person who has suffered pecuniary damage as a result of a defendant's criminal activities." Wyo. Stat. Ann. § 7-9-101(a)(v) (LexisNexis 2005 & Supp. 2006). "Criminal activity" that entitles a victim to restitution is defined as "any crime for which there is a plea of guilty, nolo contendere or verdict of guilty upon which a judgment of conviction may be rendered and includes any other crime which is admitted by the defendant, whether or not prosecuted." Wyo. Stat. Ann. § 7-9-101(a)(i).
[¶ 9] Reading these statutes together, pecuniary damages are a primary consideration in awarding restitution. A person is not eligible to receive restitution unless he or she is a "victim" and that person is not a "victim" unless he or she suffers pecuniary damages. Likewise, the amount of restitution a victim may receive is limited to the amount of the *105 victim's pecuniary damages. Indeed, the statutory definition of "restitution" is the "full or partial payment of pecuniary damage to a victim." Wyo. Stat. Ann. § 7-9-101(a)(iv) (emphasis added). "Pecuniary damage" means:
all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event, including damages for wrongful death. It does not include punitive damages and damages for pain, suffering, mental anguish and loss of consortium.
Wyo. Stat. Ann. § 7-9-101(a)(iii).
[¶ 10] We have previously discussed the importance on appeal of identifying a civil action under which a victim could recover based on the facts admitted by the defendant or determined by the fact-finder at trial. Alcaraz v. State, 2002 WY 57, ¶ 8, 44 P.3d 68, 71 (Wyo.2002). Indeed, the parties in the instant appeal devote a great deal of their argument to this issue. However, even if we assume for purposes of this appeal that there is a civil action that would have allowed Stevens to recover pecuniary damages, causation remains a necessary element of a restitution claim. Id., ¶ 9, 44 P.3d at 72.
[¶ 11] Victims are only entitled to receive pecuniary damages that are the "result of a defendant's criminal activities." Wyo. Stat. Ann. § 7-9-101(a)(v). We have said that, when seeking restitution, the State bears the burden of presenting credible evidence and proving the claim by a preponderance of the evidence. Renfro v. State, 785 P.2d 491, 493 (Wyo.1990). In the instant case, the State did not attempt to prove that Stevens previously had "good credit" and, therefore, could have avoided the losses for which he sought restitution.[4]
[¶ 12] The State's evidence regarding restitution consisted of Stevens' testimony at the sentencing hearing, a statement by Stevens contained in the presentence investigation report, and a victim impact statement from Stevens filed with the district court. According to the presentence investigation report, Stevens learned that his credit was being misused by Hampton in "the Fall of 2000" when he "attempted to help [his] daughter purchase a home in Pinedale." At that time he "declined to file charges" and, after speaking with Hampton's husband, he "assumed the problem had been taken care of." In 2001, he attempted to secure a personal loan to complete construction of his home and was denied due to his "devastated credit." In order to finish construction, Stevens chose to "cash-out" $40,000 from a retirement account, which resulted in a $10,847 federal income tax liability and approximately $1,084 due in California state income tax. Also in 2001, Stevens testified that he "had to replace an aging pickup with a new unit" and due to his "bad credit" was unable to secure a 2.8 percent annual percentage rate automobile loan and had to finance the purchase at 6.5 percent annually resulting in $3,182 in additional finance charges over the life of the loan.
[¶ 13] Though we generally defer to the factual findings of the district court in situations such as this, we find it unreasonable, based on the evidence presented in the instant case, for the district court to have ordered restitution in favor of Stevens. The fundamental problem is the lack of credible evidence that Stevens would have qualified for the home loan and the low-rate automobile loan in the absence of Hampton's criminal activities. Viewing the record most favorably to Stevens, it can be inferred that: (1) in December 1999, Stevens' credit was positive enough to qualify for an MBNA Mastercard, which Mastercard was fraudulently issued to Hampton; and (2) in 2001, Stevens' credit history was not positive enough to qualify for a personal loan and a low-interest automobile loan. However, the State failed to establish the causal link between Hampton's fraudulent acquisition and use of the credit card and the denials of credit in 2001. On the causation issue, the *106 record is silent. While it may be possible to infer that Hampton's fraudulent use of the MBNA account damaged Stevens' credit, it is not logical to infer that, because Stevens' credit may have been damaged it must have been unblemished before such damage. Because the State failed to prove that Stevens could have secured the necessary credit before Hampton fraudulently created the account, the State has failed to prove that Hampton was the factual cause of Stevens' denials of credit. It was the State's burden to supply such proof and, without it, restitution is inappropriate.
[¶ 14] The restitution order of the district court is reversed.
NOTES
[*] Chief Justice at time of oral argument.
[1] Hampton did not object to such reliance.
[2] Because Hampton only appeals the restitution awarded to Stevens, the charge of using false written statements to obtain property or credit in her daughter's name has no bearing on our analysis.
[3] Both charges alleged that Hampton obtained credit through the unauthorized use of Stevens' personal identifying information in violation of Wyo. Stat. Ann. § 6-3-901(a) (LexisNexis 2005 & Supp.2006).
[4] Even with sufficient proof of "good credit" before the incident, the question of proximate cause remains, given the victim's subsequent decisions, with knowledge of the tort, to purchase a vehicle and obtain a real estate loan. It could be argued that Hampton's conduct "only created a condition or occasion for the harm to occur." Alcaraz v. State, 2002 WY 57, ¶ 9, 44 P.3d 68, 72 (Wyo.2002).